(13 App. Div. 268.)

### STEPHENS v. MERIDEN BRITANNIA CO. et al.

(Supreme Court, Appellate Division, First Department. January 22, 1897.)

1. TRIAL—WAIVER OF RIGHT TO GO TO JURY.
   A party submits to the court for decision all questions of fact except that on which he asks to go to the jury, by moving that a verdict be directed in his favor after the denial of such request.

2. CHATTEL MORTGAGES—FAILURE TO FILE—RIGHTS AGAINST CREDITORS.
   The holder of a chattel mortgage which is void as against creditors of the mortgagor because not filed, and not accompanied by immediate transfer of possession (Laws 1833, c. 279, § 1), acquires no right to the mortgaged property by subsequently taking possession of it under the mortgage, as against a creditor whose claim had then accrued.

3. TROVER AND CONVERSION—FORECLOSURE OF VOID CHATTEL MORTGAGE—RECEIVER.
   An action for conversion is the proper remedy by the receiver of a mortgagor to recover from the mortgagee for taking the mortgaged property under a void chattel mortgage.

4. SAME—DEMAND—WRONGDOER.
   In such a case a demand for possession of the property before action is not necessary, since the mortgagee is, as to the receiver, a wrongdoer.

**5. SAME—BONA FIDE PURCHASER.**
    A previous demand for possession is necessary to an action for the conversion of property against a purchaser thereof in good faith from a person in possession.

Appeal from trial term, New York county.

Action by George W. Stephens, as receiver of the McCall Publishing Company, against the Meriden Britannia Company, Arthur H. Page, and Joseph H. Ringot, to recover for conversion of property of the insolvent. From a judgment entered on a verdict in favor of plaintiff directed by the trial judge, and from an order denying a motion for a new trial, defendants appeal. Affirmed as to defendant the Meriden Britannia Company, and reversed as to defendants Page and Ringot.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

George S. Daniels, for appellants.
George W. Stephens, in pro. per.

RUMSEY, J. For some time before the 19th of November, 1892, the McCall Publishing Company had been, and then was, a tenant of the defendant the Meriden Britannia Company, and owed $900 for rent, which it was unable to pay. The manager of the Meriden Company insisted upon having some security, and thereupon the McCall Company executed and delivered to the Meriden Company, as collateral security for the payment of the rent, a bill of sale of all its printing presses, machinery, and type which were then in the building occupied by the McCall Company under the lease. It was testified, by all the parties to this agreement, that they were delivered as collateral to the rent, and not as payment. The agent of the McCall Company, who gave the paper, testified that, at the time he gave it, he asked the agent of the Meriden Company not to register it, but to hold it, and that they would pay the rent to them, and the agent of the Meriden Company, who took the paper, testified that, while he did not agree to do that, he did promise that if it did not conflict with the security, nor was any damage to the security, he would hold the paper. He did hold the paper, and did not file it as a chattel mortgage, until the 7th of December after it was given, and after an attachment had been levied upon the property. At the time this paper was given, on the 19th of November, 1892, Walter Logan was a creditor of the McCall Company to a considerable amount. On the 1st of February, 1893, he sued the McCall Publishing Company for his debt, and recovered a judgment on the 8th of February for $1,709.99, and on the 21st of February, 1893, Mr. George W. Stephens was appointed a receiver in supplementary proceedings, and qualified on that day. Before that had been done, and about the 21st of January, 1893, the Meriden Company took possession of this property by virtue of the mortgage, and not otherwise, and sold it to the defendants Page and Ringot. After the appointment of Stephens as receiver, he brought this action for the conversion of the property, against the Meriden Britannia Company, and

Page and Ringot, in whose possession it was at that time. Upon the trial, and after the evidence was all in, the plaintiff asked for the direction of a verdict, which was denied. The court thereupon requested the counsel for the defendant to state on what question he desired to go to the jury, to which he replied, "I ask the right to go to the jury upon the disputed question of fact,—as to whether this was a conditional or absolute sale." This motion was denied, and the defendant's counsel took an exception. The defendant's counsel then asked for the direction of a verdict in favor of the defendant, which was denied, and an exception was taken to that denial. The court thereupon ordered a verdict for the plaintiff, which was excepted to by the defendant. The defendant, at the close of the plaintiff's case, had requested to go to the jury on the question whether there was a conditional or absolute sale of the property pursuant to this paper, which was also denied, and an exception was taken. We are quite clear there was no question for the jury upon that point. The paper itself does not specify whether it is given as an absolute sale or as security, but Mr. Bladworth, the treasurer of the McCall Company, who gave the paper, and Mr. Bacon, the manager of the Meriden Company, who took it, both testify that the paper was given as collateral security for the payment of the rent; and it is not denied that the property was to be left in the possession of the McCall Company in the anticipation that the rent would be paid, and upon Mr. Bladworth's statement that he would pay it in a short time. There was no reason, therefore, for submitting that question to the jury, and the court was right in refusing to do it.

It was not suggested that any other question should be submitted. When, therefore, the defendant, after having excepted to the denial of his request to go to the jury upon an undisputed question, had asked for a verdict in his own behalf, under the settled rules of practice he waived the right to have submitted to the jury any other question, and consented that the court should decide the case upon the facts. If there was any disputed question of fact upon any other point than the one upon which he requested to go to the jury, that question was submitted to the court by the parties when they asked for the direction of a verdict; and all such questions must be deemed to have been determined adversely to the defeated party, if there was any evidence to warrant their being found in that way. The case, therefore, depends purely upon the questions of law arising from the undisputed facts. This bill of sale having been given as a mortgage, and having been kept off the files in pursuance of the understanding between the parties, was, as against any creditor of the McCall Publishing Company, absolutely void. Laws, 1833, c. 279, § 1; 3 Rev. St. (9th Ed.) p. 2013. There was no necessity that any creditor should sue for a judgment declaring that this mortgage was not valid. The statute itself fixes its status so far as the creditor is concerned. It does not say that it is voidable, or that it may be set aside, but it says that it is absolutely void. These words have been construed in the case of Ste-

phens v. Perrine, 143 N. Y. 476, 39 N. E. 11, where the court say that the mortgage, as to the creditors of the mortgagor, was always void, and that the mortgagee could not, as against those creditors, obtain any rights under it. The mortgage being void, it was, as to these creditors, precisely the same as though it did not exist, and no proceedings could be taken under the mortgage which would, as to the creditors, give the person named as mortgagee any other or different rights than he would have if no mortgage existed. It is quite true that if the debtor, being the mortgagor, had, before the lien of any creditor came to exist, transferred the actual possession of this property to the mortgagee for the purpose of paying a debt, the transfer would have been valid, and the mortgagee might have held the property; but that would occur, not because of the mortgage, but because the debtor turned out the property in payment of his debt to a bona fide creditor. Stephens v. Perrine, 143 N. Y. 481, 39 N. E. 11. The mortgage would cut no figure in that transaction, and the transfer would be good without reference to it. But in this case the debtor did not turn out the property to his creditor. The property was taken by the creditor by virtue of this instrument, and sold to Page and Ringot pursuant to the right which it claimed under this instrument, and without any other or different consent of the debtor than might be inferred from the fact that the mortgage had been given as security. The creditor acquired no greater right, because the property was taken, than he had before that time. As is said by Brown, J., in Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951: "The mortgage being void, all proceedings under it were void, and, although the mortgagee may possess an honest claim, he cannot retain the property obtained by him upon a fraudulent mortgage, against a pursuing creditor." It makes no difference whether the creditor was one whose debt came into existence after the mortgage was given or before, if he actually became a creditor at a time when the property was in possession of the mortgagor, and the mortgage had not been filed. Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073. Mr. Stephens was properly appointed a receiver in supplementary proceedings against this foreign corporation, and as such he had precisely the same right as any other receiver would have in any other action. Logan v. Publishing Co., 140 N. Y. 447, 35 N. E. 655. The statute says that any receiver of the property and effects of a corporation may, for the benefit of creditors, treat as void all acts done, transfers and agreements made, in fraud of the rights of any creditor interested in any property held by, or of right belonging to, the trustee. Laws 1858, c. 314, § 1. It also says that every person who shall, in fraud of the rights of creditors, have received, taken, or in any manner interfered with the property of any insolvent corporation, shall be liable to the receiver of such property for the same, or for the value of any property or effects so received or taken. Section 2. A mortgage which is void as against creditors for failure to file is fraudulent under this section, precisely as though it was made in fraud of creditors. Mandeville v. Avery, supra.

We have, then, this situation of affairs: Mr. Stephens was properly appointed receiver of this insolvent corporation. As such receiver he represented the creditors. He found that the Meriden Company had taken possession of all the property of the McCall Publishing Company by virtue only of a paper which, as to the receiver and creditors, had no validity whatever, and which, as to them, the law said he might treat as void. So far as he was concerned, then, the Meriden Company had unlawfully taken possession of that property, and the law said that that company was liable to him, in a proper action, for the value of the property. The Meriden Company had sold the property. If he brought an action for the money, he would necessarily affirm the sale, and be precluded from recovering anything more, even if the necessary result were not, by affirming the sale, to affirm everything which had been done to lead up to it. The proper action to recover the property or its value, where it has unlawfully been taken possession of, is an action for the conversion of it, and it was proper to say that it had been converted from the McCall Publishing Company, because, so far as Stephens was concerned, the mortgage being void, he could still treat the property as belonging to the McCall Company after the taking, and before his appointment. Not only was he therefore correct in bringing this action, but he was strictly accurate in the allegations of his complaint. But it is said that he should have made a demand upon the Meriden Company before bringing this action. No demand was necessary. As to Stephens, the Meriden Company was a wrongdoer, and was not entitled to a demand. It appeared also, and was not disputed in the case, that, before this action was brought, the Meriden Britannia Company had disposed of the property by selling it to Page and Ringot, so that it could not have been returned if it had been demanded, and the demand would therefore have been of no avail. In such a case as that, no demand need be made. Pease v. Smith, 61 N. Y. 477. For these reasons we think that the judgment, so far as the Meriden Britannia Company is concerned, was right, and should be affirmed. But Page and Ringot stand upon a different footing. They bought the property in good faith, and for value, from the Meriden Britannia Company, who had possession of it; and although that possession, as to the creditors, was unlawful, Page and Ringot had no notice of it, and were not wrongdoers in buying the property, nor could they be made so until there had been a demand of the property from them, and a refusal on their part to deliver it. This was not done. The point was made upon the trial, and the motion to dismiss as to them should have been granted for that reason. The judgment as to them should therefore be reversed.

Judgment and order affirmed as to the Meriden Britannia Company, with costs to the plaintiff, and judgment and order reversed as to the defendants Page and Ringot, and a new trial granted as to them, with costs to them, to abide the event. All concur.